Ruff, Appellee, *v.* Spires et al., Appellants.

(No. 252—Decided April 28, 1948.)

*Mr. Kermit C. Sitterley* and *Mr. William G. Coultrap,* for appellee.

*Mr. George L. Gugle* and *Mr. James A. Gorrell,* for appellants.

Montgomery, J. The appeal to this court is on questions of law and fact, and the case was submitted upon a transcript of the evidence taken in the court below. A detailed recital of the facts will answer no useful purpose. They are, of course, known to the interested parties and counsel, and would be of no interest to anybody else. The issue is essentially a factual issue. A reading of the record leaves no doubt in the minds of the court as to the action that should be taken.

Until enjoined by the Court of Common Pleas, the defendants were operating over and through the land of the plaintiff without his approval or consent. They were professedly proceeding under the provisions of Section 6727, General Code, which is in the following language:

"A person injured by a drift of wood, sand, gravel or other substance produced casually or by growing weeds, willows, bushes of any kind or any other ob-

struction in the channel or on the banks of a stream or watercourse upon the lands of another, after three days' notice previously given in writing to the owner or occupant of such lands, if they be occupied and, if not occupied, without notice, may enter thereon, with such assistance as is necessary, and remove such obstruction.''

That section seems to us to need no construction. Its terms seem to be clear. Any intelligent man, whether he be lawyer, farmer, or operator of a power dragline, should understand the language of that section.

It has long been in force, obviously passed by the Legislature for a specific and limited purpose. It does authorize what would otherwise be an infringement or a trespass upon one man's land for the benefit of another. It seems obvious to us that such a statute must be construed strictly, and that anyone proceeding to act under it cannot go beyond its express terms.

However, in the instant case a strict compliance with what is authorized by this statute is not what was sought by the defendants, at least, the defendant Miller, who is actively contesting this action. Called to the witness stand in the lower court for cross-examination, he testified, and we quote from the record:

''Q. You told the engineer, did you not, what you wanted done? A. Yes. It was in the notes that he had got.

''Q. What did you tell him you wanted done? A. Wanted thirty eight feet at the top and eighteen feet at the bottom, five feet deep minimum.

''Q. You stated that to the engineer, you say? A. No, I didn't know anything about the engineer, the engineer figured that out, I didn't tell the engineer because I didn't know until he figured it out.

''Q. The creek bed was to be cut back was it not, so

there would be a minimum of 38 feet in width at the top from one end to the other? A. Yes.

"Q. And eighteen feet in width at the bottom of the bed? A. Yes.

"Q. Furthermore that there was to be, it was to be five feet deep from the ground surface, minimum? A. Yes.

"Q. That would necessitate, would it not, cutting the banks back in certain places? A. It probably would, yes.

"Q. More in some places than in other? A. That is right.

"Q. You refer to this in the contract as drainage ditch? A. Yes.

"Q. In fact, you were digging a drainage ditch here, were you not, so your farm would drain? A. That is right."

And the engineer who prepared those plans, on the strength of which the dredging contract was entered into, and under which the defendant Spires, in charge of the dredging, worked, testified, as shown by the record:

"Q. Mr. Dumond, these specifications which you said were your specifications as set out in the contract between Alvin Miller and Hubert A. Spires Excavating Company, were not specifications to remove obstructions to the flow of water in Clearcreek itself, was it? A. No.

"Q. You were hired, were you not, to determine how much it was necessary to excavate Clearcreek and how far to excavate it in order to give fall, enough fall that you could have drainage of Muddy Prairie and for tile drainage of Muddy Prairie, isn't that true? A. Originally my thought was just to drain Muddy Prairie and usually we aim generally to provide tile drainage.

"Q. That was for Muddy Prairie, wasn't it? A. Yes."

Such an operation is not to be justified under the authority of Section 6727, General Code, above quoted. We are not passing upon what other right, if any, defendant Miller might have to open up this watercourse in controversy.

Two incidental questions may be touched upon in passing:

1. We hold that the notice served upon Ruff was adequate, because it does indicate what was required of him, and he admitted that it was handed to him by the defendant Miller. It did put him upon notice.

2. We hold that the plaintiff in this action has no adequate remedy at law, and that he was justified in asking for an injunction. If the injunction had not been granted and the work had proceeded, it is difficult to understand how this land could have been restored to its original condition, or how the compensation for the injury done could be measured, and, if it could not be measured, then it is difficult to see how adequate and proper compensation could be made.

There may be a decree for the plaintiff, enjoining the defendants, and each of them, from doing anything upon the land of the plaintiff other than what is specifically provided for by Section 6727, General Code, hereinbefore quoted. Counsel for plaintiff may prepare an entry in accordance with this conclusion. Motion for new trial, if filed, will be overruled.

*Decree for appellee.*

PUTNAM, P. J., and McCLINTOCK, J., concur.